UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        :
DANY ROJAS-VEGA,                        :
                                        :
                 Plaintiff,             :
                                        :
         v.                             :   Civil Action No. 16-2291 (ABJ)
                                        :
UNITED STATES IMMIGRATION AND           :
CUSTOMS ENFORCEMENT, *et al.*,          :
                                        :
                 Defendants.            :
_____  :

## **MEMORANDUM OPINION**

Plaintiff Dany Rojas-Vega has brought this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against United States Immigration and Customs Enforcement ("ICE") and the United States Department of Homeland Security ("DHS").[1] The parties have filed cross-motions for summary judgment. For the reasons discussed below, the Court will grant summary judgment in favor of ICE and deny plaintiff's motion.

## **FACTUAL BACKGROUND**

"Pursuant to the Immigration and Nationality Act . . . the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens." Mem. of P. & A. in Support of Defs.' Mot. for Summ. J. ("Defs.'

---

[1] Although plaintiff names United States Customs and Immigration Services ("USCIS") as a defendant in this case, plaintiff does not allege that he submitted a FOIA request to USCIS, and Defendants represent that USCIS did not receive one. *See* Defs.' Combined Reply in Support of its Mot. for Summ. J. (ECF No. 26) & Opp'n to Pl.'s Cross-Mot. for Summ. J. (ECF No. 38) at 1 n.1. Therefore, the Court dismisses USCIS as a party and any claim Plaintiff makes against USCIS.

1

Mem."), Declaration of Matthew Riley, Acting Deputy FOIA Officer, U.S. Immigration and Customs Enforcement ("Riley Decl.") ¶ 26. According to the declarations submitted in this case, "ICE is the largest investigative arm of DHS, and . . . is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials [supporting] illegal enterprises." Riley Decl. ¶ 26. It performs "the investigative and interior enforcement elements of the [former] U.S. Customs Service and the Immigration and Naturalization Service." *Id*. ¶ 6. ICE's Office of Enforcement and Removal Operations ("ERO") is responsible for "identify[ing], arrest[ing], and remov[ing] aliens who present a danger to national security or are a risk to public safety, as well as those who enter the United States illegally or otherwise undermine the integrity of our immigration laws and our border control efforts." *Id*. ¶ 7. Among other duties, ERO "transports removable aliens from point to point, manages aliens in custody or in an alternative detention program . . . , and removes individuals from the United States who have been ordered deported." *Id*.

The ICE FOIA Office processes and responds to any FOIA requests that ICE receives. *Id*. ¶ 2. Its staff determines which program office within ICE is "reasonably likely to possess records responsive to [each] request[,] if any[,] and to initiate [a] search[] in [that] program office[]." *Id*. ¶ 5. FOIA Office staff then forwards the request to the appropriate program office's designated point of contact ("POC"), the person primarily "responsible for communications between that program office and the ICE FOIA Office." *Id*. The POC reviews the FOIA request and "any case-specific instructions that may have been provided," *id*., and in turn forwards the request and instructions "to the individual employee(s) or component office(s) within the program office [the POC believes is] reasonably likely to have responsive records[.]" *Id*. The designated employee or component office staff member is directed to conduct a search of the "file systems, including

both paper and electronic files, which in [his or her] judgment, based on [his or her] knowledge of the manner in which [the office] routinely keep[s] records, would most likely be the files [containing] responsive documents." *Id*. Upon completion of the search, the results are provided to the POC, "who in turn provides the records to the ICE FOIA Office." *Id*. At that point, FOIA Office staff "review[s] the collected records for responsiveness." *Id*.

Plaintiff alleges that on October 2, 2014, he submitted a FOIA request in an email message to ICE's FOIA Office. Compl. ¶ 10. He received no response to the October 2014 email, and "filed a follow-up request on May 30, 2016." Mem. of P. & A. in Support of Prelim. Inj., ECF No. 34-1 ¶ 17; Riley Decl. ¶ 9. ICE treated plaintiff's May 30, 2016 email as a new FOIA request, *see* Riley Decl. ¶¶ 3, 9, and assigned it a reference number, 2016-ICFO-38593, *see* Pl.'s Opp'n to [41, 42] Def.'s Response & Mem. of P. & A. in Support of Granting Pl.'s Combined Cross-Mot. for Summ. J. and Discovery [36] ("Pl.'s Reply"), ECF No. 45-2 at 13 (email to plaintiff from ICE FOIA Office dated June 13, 2016, acknowledging receipt of ICE FOIA Request 2016-ICFO-38593 on May 30, 2016). "Plaintiff requested all ICE records pertaining to his state criminal court transcripts for case number M707038." Riley Decl. ¶ 9.

Plaintiff has filed several exhibits with his many submissions to the Court. Among these exhibits are 18 pages of email correspondence between plaintiff and the ICE FOIA Office. *See generally* Pl.'s Reply, ECF No. 45-2. In an email dated June 17, 2016, plaintiff provides more specifics about the scope of his original October 2014 request, and he made it clear that he was still seeking:

> Specific transcripts to the Oct[ober] 6, 1995 state proceedings in case M707038 and the name(s) of the District Counsel (INS) that was contacted by the District Attorney's Office on October 6, 1995, requested by me to former U.S. Immigration and Naturalization Service ("INS") and related information . . . .

3

*Id*., ECF No. 45-2 at 15.

This was not plaintiff's first effort to obtain transcripts of these state court proceedings from immigration authorities. *See* Compl. ¶¶ 3, 6. In June 2003, plaintiff submitted a FOIA request "to former INS located at 880 Front Street, Suite 1234, San Diego, CA 92101-8834," Pl.'s Reply, ECF No. 45-2 at 15 (emphasis removed), seeking, among other information, a verbatim transcript of proceedings on October 6, 1995 in the San Diego Municipal Court in Case Number M707038. *See id*.; Table of Exhibits, ECF No. 8-2 at 15 (Ex. 7, June 2, 2003 Freedom of Information/Privacy Act Request). INS responded by releasing in full 534 pages of records, releasing in part four pages of records, and withholding in full 25 pages of records. *See id*., ECF No. 8-2 at 17 (Ex. 8-1, June 25, 2003 response to FOIA Request No. SND2003002513) at 1; *see also* Compl. ¶ 5. Plaintiff submitted an identical FOIA request to ICE on September 2, 2008 (Request No. 2008FOIA3893), which was referred to United States Immigration and Customs Enforcement (Request No. NRC2008055319). Compl. ¶¶ 6-7. USCIS released 194 pages of records in their entirety, and informed plaintiff that "[t]here was no verbatim copy of the [transcript]" in its files. Table of Exhibits, ECF No. 8-2 at 19 (Ex. 9, June 17, 2009 response to Request No. NRC2008055319).

Although plaintiff's 2003 and 2008 FOIA requests have been mentioned in other civil actions, it does not appear that a federal district court reached the merits of the agencies' responses. *See Rojas-Vega v. U.S. Citizenship and Immigration Serv.*, No. 13-CV-172, 2013 U.S. Dist. LEXIS 77801, at *2 (S.D. Cal. May 30, 2013) (noting that plaintiff "first requested [a 1995 state court transcript, notes and memos related to that case, and the names and titles of the INS official involved] from the [INS] in June 2003, but never appealed to the district court," and that the court had dismissed *sua sponte* plaintiff's civil action regarding the 2008 request).

Plaintiff did file a previous FOIA action in this court, but it pertained to a 2012 FOIA request to USCIS's National Records Center, which resulted in the release of records maintained in plaintiff's Alien File. *See Rojas-Vega v. U.S. Citizenship & Immigration Serv.*, 132 F. Supp. 3d 11, 14 (D.D.C. 2015) (identifying the "operative FOIA request in this case [as the one] submitted to USCIS's National Records Center . . . in May 2012 (case number NRC2012052309)"), *aff'd*, 650 F. App'x 36, 37 (D.C. Cir. 2016) (per curiam).

With respect to the request at issue in this case, ICE FOIA Office staff construed ICE FOIA Request 2016-ICFO-38593 as one "for records related to ERO's immigration enforcement mission[.]" Riley Decl. ¶ 10. For this reason, staff identified ERO as the program office most likely to have responsive records, and forwarded plaintiff's request to the ERO's point of contact, the Information Disclosure Unit (IDU). *Id*. ERO IDU's search located "no records . . . pertaining to the [p]laintiff's state court transcripts." *Id*. ¶ 11.

On June 27, 2016, plaintiff pursued an administrative appeal, *id*. ¶ 12, and ICE's Office of the Principal Legal Advisor, Government Information Law Division, affirmed the adequacy of ERO IDU's search, *id*. ¶ 13. Plaintiff then filed this civil action on October 24, 2016,[2] seeking judicial review of ICE's final determination and the denial of his appeal on the ground that the agency's search for responsive records was inadequate. Compl. ¶ 14.

According to the Acting Deputy FOIA Officer "ICE conducted a litigation review of the FOIA request and administrative records, and the associated dockets proffered by [p]laintiff."

---

[2] Plaintiff's original complaint bears a date stamp indicating that the Clerk of Court received the pleading on October 24, 2016. Review of the Court's CM/ECF docket reveals that the Court granted plaintiff's application to proceed *in forma pauperis* on November 10, 2016, and that the Clerk of Court officially filed the complaint, ECF No. 1, and application to proceed *in forma pauperis*, ECF No. 2, on November 14, 2016. The Court treats the complaint as if it had been filed on October 24, 2016.

Riley Decl. ¶ 15. "On January 30, 2017, [a Management and Program Analyst] conducted a search using the ENFORCE Alien Removal Module (EARM) application," which yielded "thirteen . . . pages of EARM case summaries." *Id*. These summaries were considered "non-responsive to [p]laintiff's FOIA request [because they] do not pertain in any way to any state court transcripts, record of proceedings, or state plea bargain." *Id*. ¶ 16. Nevertheless, "out of [an] abundance of caution and in the agency's discretion," ICE released the EARM case summaries, *id*., after having redacted certain information under Exemptions 6, 7(C), and 7(E), *see id*. ¶¶ 24, 28, 30.

"Due to an administrative error, ICE believed it mailed these records on February 27, 2017[.] Upon discovering the error, on April 4, 2017, ICE immediately sent [p]laintiff the records on that same date," *id*. ¶ 16 n.1, "via Federal Express," *id*. ¶ 17. "On April 20, 2017, the records were returned . . . as undeliverable to the address in Costa Rica provided by [p]laintiff." *Id*. ICE then "disseminated the responsive records to [p]laintiff via email on May 11, 2017." *Id*. ¶ 18.

**LEGAL STANDARD**

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). On a motion for summary judgment, the Court generally "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Ordinarily, where the agency moves for summary judgment, it must identify materials in the record to demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1). Plaintiff as the non-moving party must point to specific facts in the record to show that there remains a genuine issue suitable for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). But where, in a FOIA case, a

6

plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations," *Moore*, 601 F. Supp. 2d at 12, provided that the declarations are not "conclusory, merely reciting statutory standards, or . . . too vague or sweeping." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (footnote omitted).

## ANALYSIS

Plaintiff identifies "[t]he operative FOIA request in this case" as the one he "submitted directly with ICE['s] Freedom of Information Act Office back in October 02, 2014 . . . and was again submitted to ICE [on] May [30], 2016 (case number ICE FOIA Case Number 2016-ICFO-38593)[.]" Compl. ¶ 10. Therefore, while plaintiff discusses other matters in his pleadings, none of his prior FOIA requests is relevant. This lawsuit not an opportunity to revisit legal issues that may have arisen in any other civil action plaintiff has filed, or to challenge responses to plaintiff's 2003, 2008 or 2012 FOIA requests, or to raise new claims unrelated to ICE's response to Request No. 2016-ICFO-38593, or to demand relief that is unavailable under FOIA.

### I. The Sufficiency of the Search for Responsive Records

The D.C. Circuit has explained that in order to obtain summary judgment, the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "The Court applies a reasonableness test to determine the adequacy of search methodology . . . consistent with the congressional intent tilting in favor of disclosure." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (citations and internal quotation marks omitted). An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover

all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). The agency may submit affidavits or declarations to explain the method and scope of its search, *see Perry*, 684 F.2d at 126, and such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

The declarant explains that ICE's FOIA Office referred plaintiff's request to ERO because it construed the request as one "for records related to ERO's immigration enforcement mission." Riley Decl. ¶ 10. Although the declaration does not describe the search originally conducted in 2016, it explains the search conducted in 2017 in the course of its litigation review of the case:

> On January 30, 2017, ERO IDU conducted a search using the ENFORCE Alien Removal Module (EARM) application. EARM is a web based application that supports ICE's processing and removal of aliens from the United States. EARM includes personal identifiers, photographs, and details of removal case proceedings to aid ERO in carrying out the removal of aliens from the United States, in accordance with the law. Through EARM, ERO accesses records related to the investigation, arrest, booking, detention, and removal of persons encountered during immigration and criminal law enforcement investigations and operations conducted by ICE, U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS), the three agencies within DHS immigration enforcement responsibilities. An ERO IDU Management and Program Analyst conducted a search using the

> Plaintiff's first name, last name, country of birth, date of birth, and alien file number.

*Id*. ¶ 15. The search results are 13 pages of EARM case summaries "listing information pertaining to [p]laintiff's immigration history." *Id*. ¶ 16. The declarant goes on to state that "transcripts of state court proceedings do not reside under the purview of ICE," *id*. ¶ 14, and that none were found among ERO's records, *id*. ¶ 11.

ICE's supporting declaration shows that, based on information plaintiff provided in his FOIA request and supporting documents, *see, e.g.*, Pl.'s Reply, ECF No. 45-2 at 4, 9, it was reasonable that ICE FOIA staff referred plaintiff's request to ERO, the program office responsible for removing individuals from the United States who have been ordered deported, and that ERO IDU staff searched EARM, where records regarding the processing and removal of aliens from the United States are maintained, and that staff conducted a search using plaintiff's personal identifying information as search terms. The Court concludes that ICE's search for responsive records was reasonable under the circumstances.

Plaintiff challenges the adequacy of ICE's search on two grounds. First, plaintiff contends that ICE did not search "the location [where he] indicated that responsive records [were] originally[] requested, processed, located and withheld;" nor did it produce "his copy of the transcripts it withheld in 2003." Pl.'s Cross-Mot. for Summ. J. and for Orders Allowing Him to Conduct Discovery and Requiring Defs. To Process his Requests In Accordance [with the] Freedom of Information Act, ECF No. 36 ("Pl.'s Opp'n") at 6. According to plaintiff, his May 30, 2016 and June 17, 2016 emails to the ICE FOIA Office "gave the location of 880 Front Street, Suite 1234, San Diego, CA 92101-8834 as the INS branch office where his June 3, 2003 request was mailed," Mem. of P. & A. in Support of Opp'n to Def.'s Mot. for Summ. J. and in Support of Pl.'s Cross-Mot. for Summ. J., ECF No. 36-1 ("Pl.'s Mem.") at 8 ¶ 11, and he faults ICE for

limiting its search to EARM records only, *id*. at 11 ¶¶ 18-19. Because the May 30, 2016 request, No. 2016-ICFO-38593, is the operative FOIA request in this case, the 2003 FOIA request is not relevant. The fact that plaintiff informed ICE that he had previously requested the same or similar information from the San Diego office of the former Immigration and Naturalization Service did not give rise to an obligation on the part of ICE to search that location in response to the new request, and the fact that it did not so does not make the search inadequate.

Plaintiff's second challenge presumes that ICE previously maintained a copy of the state court transcripts he seeks, and that it improperly destroyed or otherwise wrongfully withheld them from him.[3] *See, e.g.*, Pl.'s Opp'n at 6; Pl.'s Mem. at 9 ¶¶ 13-14. But this is speculation on plaintiff's part, and he does not point to any facts that would counter defendants' showing that it searched for records related to the plaintiff and turned over what it found. *See Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015) (noting that plaintiff bears "burden to identify evidence that a reasonable jury could credit in support of each essential element of [his] claims" and "cannot rely on the allegations of [his] own complaint in response to a summary judgment motion, but must substantiate them with evidence"); Fed. R. Civ. P. 56(e)(2) (authorizing court, when non-moving party "fails to properly address another party's assertion of fact as required by Rule 56(c)," to "consider the fact undisputed for purposes of the motion").

Moreover, the adequacy of ICE's search for responsive records depends on the methods, not the results, of the search. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). "[T]he agency's failure to turn up a particular document, or mere speculation that as

---

[3] Plaintiff believes that the transcript he seeks is among the 25 pages of records responsive to his 2003 FOIA request and have been withheld improperly in violation of the FOIA. *See* Compl. ¶¶ 14, 16; *see Rojas-Vega v. Cejka*, No. 09CV2489, 2010 U.S. Dist. LEXIS 37897, at *12 (S.D. Cal. Apr. 14, 2010).

yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004). *See Parker v. U.S. Immigration & Customs Enforcement*, 238 F. Supp. 3d 89, 102 (D.D.C. 2017) ("In this circuit, it is clear that a plaintiff's unsubstantiated belief that missing records exist cannot demonstrate the inadequacy of an agency's search."). Particularly in this case, where the agency's declarant averred that the transcripts in question are not the type of records that the agency maintains, plaintiff's speculation that the records have either been destroyed or withheld is not enough to defeat the defendant's motion for summary judgment.

## II. Exemptions 6, 7(C) and 7(E)

Defendants filed their motion on May 17, 2017, and on the following day, the Court issued an Order, ECF No. 28, advising plaintiff of his obligation under the Federal Rules of Civil Procedure and the local rules of this Court to respond to the motion. Plaintiff did file a timely response, but he did not address defendants' legal arguments for withholding information under Exemptions 6, 7(C) and 7(E).

The District of Columbia Circuit held that "[u]nder the Federal Rules of Civil Procedure, a motion for summary judgment cannot be 'conceded' for want of opposition." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). It underscored that the "District Court 'must always determine for itself whether the record and any undisputed material facts justify granting summary judgment.'" *Id.* (quoting *Grimes*, 794 F.3d at 95). However, that ruling arose in the context of a case in which the district court exercised its discretion under the Local Rules to treat a summary judgment motion as conceded when the non-moving party failed to file any opposition at all. The Court stated:

> A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its

> motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. And then a district court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment. These standards cannot be satisfied if, as allowed by Local Rule 7(b), the District Court simply grants judgment "as conceded" when the nonmoving party fails to meet a deadline.

*Id.* at 507 (internal citations, quotation marks, and edits omitted).

But that is not what happened in this case. Defendant met its initial responsibility to inform the Court of the basis of its motion, and it pointed to the portions of the record demonstrating the lack of any genuine issue of material fact. And here, unlike in *Winston & Strawn*, plaintiff filed a timely opposition to the motion for summary judgment. Thus, plaintiff availed himself of the opportunity provided in Rule 56(c) to address all of defendant's assertions of fact, and, pursuant to Rule 56(e), the Court may consider facts "undisputed for purposes of the motion" when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . ." Fed. R. Civ. P. 56. Since plaintiff has not presented facts that would give rise to a genuine dispute of material fact concerning the invocation of Exemptions 6, 7(C) and 7(E), there is a basis to find that there is no dispute for the Court to adjudicate, and the requirements of Rule 56 have been satisfied. *See e.g.*, *Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 105-06 (D.D.C. 2017) (finding that where an exemption under FOIA is not challenged, there is no dispute for the Court to resolve). In any event, the record reflects that there was a sound legal basis for the application of the exemptions.

### A. Law Enforcement Records

FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To

show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The declarant explains that ICE "is the largest investigative arm of DHS . . . tasked with preventing . . . activities . . . threaten[ing] national security and public safety by investigating the people, money, and materials . . . support[ing] illegal enterprises." Ridley Decl. ¶ 26. The EARM case summaries "pertain to ICE's immigration enforcement actions" taken under DHS's authority to administer and enforce laws regarding the immigration and naturalization of aliens. *Id*. Thus, ICE meets its threshold requirement by demonstrating that the responsive records were compiled for law enforcement purposes.

**B. Exemptions 6 and 7(C)**

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Any information that "applies to a particular individual" qualifies for consideration under this exemption. *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). Analysis under either exemption requires the Court to balance the privacy interests of the individuals mentioned in the records against the public interest in the records' disclosure. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). When balancing the private interest against

the public interest in disclosure, the relevant public interest "is one that focuses on the citizens' right to be informed about what their government is up to." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (citation and internal quotation marks omitted).

ICE relies on Exemption 6 in conjunction with Exemption 7(C) to withhold "personally identifiable login information of ICE employees who accessed EARM." Ridley Decl. ¶ 8; *see id*. ¶ 28. The declarant explains that disclosure of this login information "could lead to the identification of the ICE employees and subject [them] to harassing telephone calls and unwarranted hostility, which could disrupt and impede official law enforcement activity." *Id*. ¶ 28. According to the declarant, these ICE personnel "handle a myriad of tasks relating to the enforcement of federal immigration law, including the investigation of noncitizens [who] may be illegally present in the United States." *Id*. These ICE employees "have a privacy interest in not being targeted by individuals who may begrudge them for [their] affiliation [with ICE]," the declarant states. Plaintiff fails to articulate and ICE does not identify a public interest or benefit in disclosure of this login information, as it "would not assist the public in understanding how ICE is carrying out its statutory responsibilities." *Id.*

The Court concludes that ICE properly withholds the names of and identifying information about third parties appearing in the responsive EARM case summaries. *See, e.g., Parker*, 238 F. Supp. 3d at 99; *Rojas-Vega*, 132 F. Supp. 3d at 18.

**C. Exemption 7(E)**

Exemption 7(E) protects law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "D.C. Circuit precedent 'sets a relatively

low bar for the agency to justify withholding' information under FOIA Exemption 7(E)." *Ortiz v. U.S. Dep't of Justice*, 67 F. Supp. 3d 109, 122 (D.D.C. 2014) (quoting *Blackwell*, 646 F.3d at 42). "[I]nternal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation" may be protected under Exemption 7(E), *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) (citation omitted), and even if the documents "are not 'how-to' manuals for law-breakers," *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).

Under Exemption 7(E), ICE withholds "internal URLs, case numbers, case categories, subject identification numbers, case identification numbers, and internal identifying codes and departure statuses." Ridley Decl. ¶ 30; *see id.*, Vaughn Index at 3. The manner by which ICE employees label cases, access databases, and maintain information regarding a case "is both a law enforcement technique and procedure that is not commonly known to the public," the declarant states. *Id.* ¶ 31. Further, the declarant explains that disclosure of this information "could assist unauthorized parties in deciphering the meaning of the codes and numbers, gaining improper access to law enforcement databases, and [could] assist in the unauthorized party's navigation of the law enforcement database." *Id*. If this information were not protected, persons "seeking to violate or circumvent the law [could] take proactive steps to counter operational and investigative actions taken by ICE during enforcement operations." *Id*.

The Court concludes that this type of information properly is withheld under Exemption 7(E). *See Parker*, 238 F. Supp. 3d at 100 (concluding that ICE properly withheld "sensitive database and event codes, identification numbers, law enforcement system URLs, internal website links, record identification numbers, event numbers, category codes, TECS codes, method codes, file numbers, . . . status codes, internal agency codes, case numbers, program codes, and system

15

codes" under Exemption 7(E)); *Ortiz*, 67 F. Supp. 3d at 123 (concluding that ICE properly withheld "external system identification numbers, and other law enforcement agency database case numbers, or identifiers, means of access to intra-agency databases to include case file numbers, event numbers, internal codes, computer function commands, identification numbers, and other law enforcement codes and numeric references" under Exemption 7(E)).

**D. Segregability**

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999).

The declarant avers that ICE staff under his supervision "has reviewed each record line-by-line to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied." Ridley Decl. ¶ 33. He concludes that "all information not exempted from disclosure pursuant to [Exemptions 6, 7(C) and 7(E)] was correctly segregated and non-exempt portions were released." *Id.* ¶ 34.

Based on the Court's review of ICE's supporting declaration and redacted copies of the EARM records themselves, *see* Notice and Motion to Compel, ECF No. 31-1, the Court finds that all reasonably segregated material has been released.

## CONCLUSION

The Court concludes that ICE has conducted a reasonable search for records responsive to Request No. 2016-ICFO-38593, and that it properly has withheld information under Exemptions 6, 7(C) and 7(E). ICE has fulfilled its obligations under the FOIA, and the Court therefore grants

16

its motion for summary judgment. Plaintiff's cross-motion is denied. An Order is issued separately.

DATE: March 26, 2018

/s/
AMY BERMAN JACKSON
United States District Judge